Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| | | |
|---|---|---|
| JENNIFFER FELICIANO ALVERIO<br>Apelada<br><br>v.<br><br>JOSÉ RAMÓN HERNÁNDEZ GUZMÁN<br>Apelado<br><br><br>LORIANIZ HERNÁNDEZ FELICIANO<br>Apelante | TA2026AP00257 | Apelación procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm. NSRF200401303<br><br>Sobre:<br>Alimentos |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 26 de mayo de 2026.

Comparece Lorianiz Hernández Feliciano (joven Hernández Feliciano o apelante), a través de recurso de *Apelación,* solicitando que revoquemos una *Resolución*[1] emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI), el 22 de enero de 2026. Mediante dicho dictamen, el foro apelado declaró, en lo que nos concierne, *No Ha Lugar* la petición de alimentos entre parientes incoada por la aludida joven contra su padre, el señor José Ramón Hernández Guzmán (señor Hernández Guzmán o apelado). Juzgó el TPI al así decidir que **no** correspondía la concesión de los alimentos entre parientes solicitada porque, una vez graduada de escuela superior, y previo a la joven advenir a la mayoridad, esta no prosiguió estudios *de manera ininterrumpida,* según lo requiere el Artículo 655 del Código Civil de 2022, *infra.*

---

[1] A pesar de que el foro primario denominó su dictamen como Resolución, en *Figueroa v. Del Rosario*, 147 DPR 121,129 (1998), nuestro Tribunal Supremo estableció que los dictámenes de custodia y de alimentos que modifican o intentan modificar los dictámenes finales previos constituyen propiamente sentencia. En el caso ante nuestra atención, estamos ante una determinación final sobre la no concesión de alimentos entre parientes, y la parte a quien tal decisión le resultó adversa tiene derecho a apelar.

Sopesado el asunto de derecho aludido, decidimos *Revocar* e impartir instrucciones para que se continúen los procesos, conforme más adelante detallaremos.

## I. Resumen del tracto procesal

Según se recoge en la *Resolución* recurrida, 13 de mayo de 2024, los padres de la joven Hernández Feliciano estipularon una pensión alimentaria de cien dólares ($100.00) semanales en beneficio de esta y de uno de sus hermanos.

No obstante, el 6 de abril de 2025, la joven Hernández Feliciano advino a la mayoría de edad, por lo que, el 22 de octubre del mismo año, presentó *pro se* una *Solicitud de Alimentos por Hijo(a) Mayor de Edad,* a través del formulario provisto por el Tribunal para tales fines. En el formulario, la joven Hernández Feliciano: incluyó como partes peticionadas a sus progenitores (el señor Hernández Guzmán y la señora Jennyfer Feliciano Alverio), de quienes afirmó que tenían capacidad económica para proveerle una pensión alimentaria; informó estar estudiando a tiempo completo Artes Visuales en la Universidad del Sagrado Corazón, **desde que era menor de edad**; adujo tener buen aprovechamiento académico; y que se le debía cierta cantidad en concepto de pensión alimentaria. (Énfasis provisto).

En respuesta, el señor Hernández Feliciano presentó una *Réplica a Moción de Desacato y Relevo de Pensión Alimentaria.* Inició haciendo referencia al acuerdo sobre pensión alimentaria que alcanzó con la madre de la joven Hernández Feliciano en mayo de 2024. Entonces, adujo lo que sigue: que la peticionaria había culminado sus estudios de escuela superior en mayo de 2022; que, a partir de esto, la joven estableció un negocio de venta de bisutería y comenzó a laborar en Pinceladas Art Studio, LLC, mediante servicios profesionales prestados desde el 15 de febrero de 2023, hasta el presente; añadió que ésta trabajaba un mínimo de 6 horas semanales devengando $10.50 la hora, siendo tales servicios pagados de

manera quincenal, mediante cheque; afirmó que, según información provista por la peticionaria en su escrito, ésta comenzó a incursionar en el campo laboral desde que se graduó de escuela superior en mayo de 2022, y no fue sino hasta agosto de 2025 que inició estudios universitarios.

Una vez el señor Hernández Feliciano adujo lo anterior, entonces arguyó que la joven Hernández Feliciano no cumplía con lo dispuesto en el Artículo 655 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7533, de cursar estudios de manera ininterrumpida, para tener derecho a una pensión alimentaria como mayor de edad. En consecuencia, sostuvo que procedía relevarle del pago de la pensión alimentaria a favor de la joven Hernández Feliciano. En específico, esgrimió que: "Lorianiz ha incumplido con el requisito establecido mediante legislación y jurisprudencia de que el alimentista debe cursar sus estudios de manera continua e ininterrumpidamente. La joven adulta no inicio (*sic*) su carrera de bachillerato durante la minoridad y se ha dedicado a actividades comerciales. Acorde con los documentos provistos por Lorianiz Hernández Feliciano, la joven adulta comenzó a cursar su primer semestre de universidad en el año 2025; tres (3) años posteriores a la culminación de sus estudios".[2]

Lo próximo de lo que tenemos constancia es de la *Resolución* emitida por el TPI cuya revocación nos solicita la parte apelante. Según surge de dicho dictamen, se llevó a cabo una vista sobre alimentos en la que: 1) se consideró la solicitud de revisión de pensión alimentaria instada por la señora Feliciano Alverio respecto a una hija que aún es menor de edad (los padres de la aquí apelante llegaron a un acuerdo para la pensión de dicha hermana menor); 2) se consideró la solicitud de pensión alimentaria entre parientes instada por la joven Hernández Feliciano contra el recurrido.

Al dar lectura al referido dictamen, lo primero que llamó nuestra atención es que, aparentemente, el TPI no realizó una vista evidenciaria al

---

[2] Apéndice 3 del recurso de apelación, pág. 3.

considerar la solicitud de pensión alimentaria entre parientes, sino que se limitó a escuchar las argumentaciones esgrimidas por las representaciones legales de las partes acerca de ello. Se hizo constar en la *Resolución* el planteamiento del señor Hernández Guzmán sobre el presunto incumplimiento de la apelante con uno de los criterios dispuestos por el Artículo 655 del Código Civil de 2020 para calificar para una pensión por gastos de estudios ya alcanzada la mayoridad: continuar estudiando ininterrumpidamente una vez graduada de la escuela superior. Sobre lo mismo, también se dio cuenta de la alegación del apelado de que, una vez la joven Hernández Feliciano se graduó de escuela superior, se dedicó a trabajar en un negocio, del cual devengaba $10.50 la hora, y estuvo, al menos, dos años sin estudiar antes de ingresar en la universidad.

Según la misma narrativa incluida en la *Resolución* bajo discusión, la abogada de la apelante no refutó los planteamientos sobre que esta inició estudios universitarios dos años después de graduarse de escuela superior.

Evaluados los argumentos de las partes, el foro apelado determinó que no procedía conceder la pensión alimentaria entre parientes debido a que la joven incumplió el requisito del Artículo 655 del Código Civil, *infra*, sobre cursar estudios de manera ininterrumpida. Precisó el mismo foro primario que la apelante había iniciado sus estudios universitarios a los dos (2) años después de haberse graduado de la escuela superior.

Insatisfecha, la joven Hernández Feliciano presentó una *Moción de Reconsideración*. **Arguyó que la apelante había comenzado sus estudios universitarios siendo menor de edad, viéndose imposibilitada de continuar sus estudios luego de graduarse de escuela superior debido a que no tenía transportación, y no fue sino hasta que pudo coordinar tal transportación que pudo iniciar los estudios universitarios, asunto que le constaba a su padre demandado, pues aportaba para el pago de peaje y gasolina**. (Énfasis provisto).

Luego del apelado instar *Réplica* a dicha solicitud de reconsideración, el TPI declaró *No Ha Lugar* la *Moción de Reconsideración.*

Es así como la joven Hernández Feliciano acude ante nosotros, señalando la comisión del siguiente error por el TPI:

> Erro *[sic]* el Tribunal de Primera Instancia, al negarle a la joven Lorianiz Hernandez *[sic]*, el derecho a solicitar una pensión alimentaria entre parientes, al interpretar que según el Articulo *[sic]* 655 del Codigo *[sic]* Civil la joven debia *[sic]* continuar estudios inmediatamente luego de graduarme *[sic]* de cuarto año.

En respuesta, el señor Hernández Guzmán presentó *Alegato en Oposición*, en el que recalcó su postura en torno al incumplimiento por la apelante con los requisitos dimanantes del Artículo 655 del Código Civil, *infra.* En específico, sostuvo que el referido articulado contiene dos elementos inseparables: (1) que el alimentista alcance la mayoridad mientras cursa estudios; y (2) que tales estudios se cursen de manera ininterrumpida, pero la parte apelante pretende que se dé eficacia al primero de dichos elementos y se ignore el segundo. Añadió que "la dilación en la continuación de los estudios, la ausencia de diligencia y aprovechamiento académico, y el intento de reactivar la obligación en un momento cercano a su extinción resultan incompatibles con los criterios de razonabilidad exigidos por nuestro ordenamiento".[3]

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II. Exposición de Derecho

a.

El derecho de los hijos a recibir alimentos, y la correlativa obligación de los padres a darlos cuando corresponda, tienen su génesis en el derecho natural, en los lazos indisolubles de solidaridad humana y de profunda responsabilidad de la persona por los hijos que trae al mundo, que son valores de la más alta jerarquía ético-moral y que constituyen una piedra angular de toda sociedad civilizada. *Arguello v. Arguello*, 155 DPR 62, 69

---

[3] *Alegato en Oposición*, Entrada Núm. 9 de SUMAC (TA), pág. 22.

(2011), citando a S. Torres Peralta, *La Ley Especial de Sustento de Menores y el derecho de alimentos en Puerto Rico*, San Juan, Pubs. STP, 1997, pág. 1.1. Son, además, derechos y obligaciones que surgen del derecho constitucional a la vida. *Íd.*; *Rodríguez v. Depto. Servicios Sociales*, 132 D.P.R. 617 (1993); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987); *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986). Están revestidos del más alto interés público. *Íd.*

Dicho lo anterior, nuestro ordenamiento diferencia el derecho a solicitar alimentos por hijos menores de edad, de los hijos que han advenido a la mayoridad. Aludiendo al articulado del derogado Código Civil (en tanto era el vigente a la fecha de la Opinión que ahora citamos), nuestro Tribunal Supremo aclaró que "la obligación alimenticia que surge del Artículo 143[4] (alimentos entre parientes) se refiere al caso del padre o de la madre de hijos no emancipados que no viven en su compañía y sobre los cuales no tiene la patria potestad, y a hijos y otros parientes, **no importa su edad**, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos". (Énfasis provisto). A diferencia de la obligación bajo el ejercicio de la patria potestad, el deber de proveer alimentos bajo el articulado del Código que regula los alimentos entre parientes se basa en el estado de necesidad del hijo y depende de la condición económica del padre alimentante. Se distingue, además, en que la obligación es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente. *Guadalupe Viera v. Morell*, 115 DPR 4, 13 (1983). (Citas omitidas).

Con precisión, se sabe que, mientras los hijos son menores de edad y no se han emancipado, ya sea por razón de matrimonio o por dictamen judicial, el progenitor custodio con patria potestad está capacitado para reclamar alimentos en beneficio de estos. *Santiago Texidor v. Maisonet Correa*, 187 DPR 550, 572 (2012); *Toro Sotomayor v. Colón Cruz*, 176 DPR

---

[4] 31 LPRA sec. 562 del derogado Código Civil.

528, 535 (2009). En esos casos, "aunque es el padre custodio o la madre custodia quien presenta la acción, la acción pertenece al hijo, es decir, el padre o la madre demandante que la inició solo actúa como un representante". *Íd.* Ahora bien, una vez cesa esa incapacidad por minoridad, los padres ya no pueden acudir a los tribunales a representar los intereses de sus hijos. En tal caso, el hijo ya mayor de edad se encuentra revestido de la capacidad jurídica necesaria para hacerlo. *Íd.*

En *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261 (1985), nuestro Tribunal Supremo zanjó que, no obstante el cambio que opera en nuestro ordenamiento cuando el menor adviene a la mayoridad para efectos de solicitar alimentos, "el deber del alimentante de proveer los medios necesarios para la educación de un hijo no termina, sin más, porque el hijo alcance la mayoría de edad. Ni la emancipación ni la mayoría de edad de los hijos relevan al padre de su obligación de alimentarles si aquellos lo necesitaren". *Key Nieves v. Oyola Nieves*; supra; *Sosa Rodríguez v. Rivas Sariego*, 105 D.P.R. 518, 523 (1976). "En el aspecto de educación e instrucción la duración de la obligación se ha limitado a la minoridad del alimentista, **pero los tratadistas están de acuerdo en que los términos del Código no pueden entenderse en sentido tan absoluto y restringido de modo que si éste se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad**". (Énfasis provisto). J. M. Manresa, Comentarios al Código Civil Español, Madrid, Ed. Reus, 1956, T. I, pág. 791; F. Puig Peña, Compendio de Derecho Civil Español, 3ra ed. rev., Madrid, Eds. Pirámide, 1976, T. V, pág. 501, según citados en *Key Nieves v. Oyola Nieves*, supra.

Es decir, que es una norma bien establecida que un tribunal puede ordenar el pago de alimentos a un hijo mayor de edad que haya comenzado sus estudios universitarios durante su minoridad y demuestre que tiene necesidad de dicha ayuda. *Key Nieves v. Oyola Nieves*, supra. Bajo

circunstancias "normales", es decir, sujeto a los resultados, diligencia y continuidad observada en los estudios, un hijo que comenzó durante su minoridad sus estudios de bachillerato tiene derecho a exigir alimentos de sus padres para obtener ese grado académico. *Íd.*

Con todo, el mismo alto foro ha advertido que lo dicho no significa "que un padre venga 'obligado' en todo caso a sufragar la totalidad de los gastos requeridos para que sus hijos obtengan el objetivo deseado". En primer lugar, siempre deberá tenerse presente el mandato del citado Artículo 146 del Código Civil a los efectos de que los alimentos a concederse serán proporcionales a los recursos del que los da y a las necesidades del que los recibe, teniendo prioridad sobre los recursos disponibles las 'necesidades' de aquellos hijos que todavía se encuentran en su minoría de edad cursando estudios primarios o a nivel de bachillerato. En segundo lugar, el hijo que solicite 'alimentos' o asistencia económica para estudios 'postgraduados' deberá demostrar afirmativamente que es acreedor de tal asistencia económica mediante la actitud demostrada por los esfuerzos realizados, la aptitud manifestada para los estudios que desea proseguir a base de los resultados académicos obtenidos y la razonabilidad del objetivo deseado. Únicamente luego de que todas las anteriores circunstancias o criterios hayan sido acreditados a satisfacción del tribunal es que dicho foro podrá fijar aquella suma de dinero que por concepto de 'alimentos' entienda procedente y razonable y, si necesario, utilizar su poder coercitivo para obligar al alimentante a cumplir con los mismos". *Key Nieves v. Oyola Nieves*, supra. (Citas omitidas).

b.

La aprobación del Código Civil de 2020 incorporó en su articulado varios principios de los elaborados en la jurisprudencia aquí citada. De esta forma, el Artículo 99 del Código aludido dispone:

> La mayoría de edad no extingue inmediatamente las obligaciones de subsistencia ni las atenciones de previsión de los progenitores o de

otros obligados a prestarlas en favor de quien adviene a la mayoridad:

(a) si la ley dispone expresamente su extensión;
(b) si el beneficiado está sujeto a la patria potestad prorrogada de sus progenitores; o
(c) si el beneficiado no tiene recursos ni medios propios para su manutención, mientras subsistan las circunstancias por las que es acreedor de ellas.

Las atenciones de previsión incluyen, sin limitarlas a, los seguros de salud, de vida y de incapacidad, los planes de estudio y las garantías prestadas sobre obligaciones que subsisten luego de advenir el beneficiado a la mayoridad. La persona que alegue la extinción de las obligaciones de subsistencia o las atenciones de previsión sobre quien adviene a la mayoridad, debe probarla. Artículo 99 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5593.

Por su parte, el Artículo 653 del Código Civil de 2020, define *alimentos* como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de la familia".

Específicamente en lo atinente a la controversia ante nuestra consideración, y en consonancia con el inciso (a) del Artículo 99 citado, en el Artículo 655 del Código Civil vigente, se dispone, bajo *Gastos de estudios,* lo que sigue:

Si el alimentista alcanza la mayoridad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares de cada caso.

El tribunal, en atención a las habilidades personales, el potencial de desarrollo y el aprovechamiento académico del alimentista, puede establecer la cuantía, el modo y el plazo de la obligación. 31 LPRA sec. 7533.

Es de ver que, al comentar la versión final acogida de este artículo por el Legislador al aprobar el Código Civil de 2020, en las *Notas del compilador* se nos advierte que, *el texto finalmente aprobado modificó sustancialmente el primer párrafo del artículo correspondiente del Borrador (del Código Civil) que disponía lo siguiente: "Si el alimentista alcanza la mayoridad mientras cursa estudios profesionales o vocacionales, la obligación de alimentarlo se extenderá hasta que obtenga el grado o título*

*académico o técnico correspondiente"*. Miguel R. Garay Aubán, *Código Civil, Tomo 2, Las Instituciones Familiares*, 2da ed. corregida y ampliada, ediciones Situm, pág. 630.

Nótese que la modificación que el Legislador insertó al articulado propuesto en el *Borrador* fue, precisamente, la inclusión del adverbio "ininterrumpidamente" al cursar estudios profesionales o vocacionales una vez alcanzada la mayoridad.

Es de observar, sin embargo, que, una vez reconocido por Garay Aubán la modificación al texto originalmente recomendado en los términos expuestos, a renglón seguido, este comentó, en lo que nos concierne, que: "en algunos casos es posible que el alimentista culmine sus estudios luego de alcanzar la mayoría de edad **o que, por razones justificadas, se vea imposibilitado de <u>comenzar</u> y terminar sus estudios durante la minoridad**". *Íd.* (Énfasis y subrayado provistos).

La expresión enfatizada guarda estrecha coincidencia con el parecer que la licenciada S. Torres Peralta ya previó sobre este asunto en su respetado tratado sobre el derecho alimentario en Puerto rico. Allí, luego de resaltar el comentario de Manresa sobre el absurdo que sería que, *empezada una carrera o profesión en la menor edad por el alimentista, se le privara el derecho a reclamar dicha necesidad al llegar a la mayoría de edad*[5], pasó a señalar que:

> Puede ocurrir que **por razones ajenas a la voluntad y control del hijo alimentista, que pueden ser de diversa naturaleza, éste llegue a la mayoría de edad sin todavía haber iniciado sus estudios de colegio, o su instrucción para un oficio o artesanía. Por ejemplo, el hijo se ve obligado a dejar sus estudios, para trabajar por su subsistencia y hasta para la subsistencia de su madre custodio y de sus hermanos de menor edad, quizás por el no pago de la pensión alimentaria de parte del padre alimentante; o por enfermedad o por otra justa causa que le impida cursar sus estudios en tiempo normal**. S. Torres Peralta, *La ley de sustento de menores y el derecho alimentario en Puerto Rico*, Publicaciones STP, Inc., Ed. 2006-2007, 5.35-5.36. (Énfasis provisto).

---

[5] Manresa, *Comentarios al Código Civil Español*, Instituto Editorial Reus, Centro de Enseñanza y Publicaciones, S.A., Preciados 6 y 23, Madrid, Ed. 1956, Tomo I, pág. 791 y 792.

**III. Aplicación del Derecho a los hechos**

El fundamento esencial del TPI para denegar la solicitud de gastos de estudios instada por la joven Hernández Feliciano contra su padre, el señor Hernández Guzmán, fue que, una vez esta se graduó de escuela superior, no se mantuvo estudiando *de manera ininterrumpida*, sino que inició sus estudios universitarios a los dos años de dicha graduación. Según la breve explicación que incluyó el foro apelado en su dictamen al aplicar el Artículo 655, interpretó que el alimentista que llega a la mayoridad y solicita gastos de estudios al alimentante debe haber continuado sus estudios luego de graduarse de escuela superior de manera ininterrumpida, es decir, sin hiatos o cese temporal alguno (o, al menos, no reconoció matices al interpretar *ininterrumpidamente*). Dicho de otra forma, en la medida en que la menor no se mantuvo estudiado de manera ininterrumpida luego de concluir la escuela superior, iniciando estudios universitarios pasado un tiempo de la referida graduación, quedó legalmente descalificada del reclamo de los gastos de estudios, por disposición expresa del Artículo 655. No coincidimos, veamos.

Antes de interpretar propiamente el carácter rígido o flexible del adverbio *ininterrumpido* contenido en el Artículo 655, juzgamos importante señalar que, a pesar del TPI haber citado una "vista evidenciaria" para dirimir la petición de *gastos de estudios* promovida por la parte aquí apelante, realmente fue celebrada una vista argumentativa. Por tanto, el TPI no tuvo la oportunidad de sopesar evidencia documental o testifical para estar en posición de hacer determinaciones de hechos que condujeran a la aplicación del derecho correspondiente. Tampoco observamos que las partes hubiesen estipulado algún hecho de los alegados, de manera que pudiera prescindirse del desfile de la prueba para establecerlos. De la *Resolución* apelada solo surge que la abogada de la apelante *no refutó los planteamientos* esbozados por la parte apelada *sobre el inicio de estudios universitarios por parte de la joven dos años después de haberse graduado*

*de la escuela superior.* Sin embargo, como es sabido, las meras alegaciones, conjeturas y especulaciones no bastan para configurar la prueba requerida. *Pressure Vessels of P.R. v. Empire Gas of P.R.*, 137 DPR 497 (1994).

Advertimos lo anterior pues nos resulta evidente que, desde su comparecencia inicial, la apelante adujo haber iniciado sus estudios universitarios *siendo menor de edad,* mientras que su padre-apelado alegó que esta comenzó tales estudios luego de alcanzar la mayoridad. Sin tener que dilucidar en este momento la importancia que pueda surtir una u otra situación fáctica ante el nuevo articulado sobre los *gastos de estudios,* lo cierto es que la jurisprudencia aquí citada ha concedido importancia al dato de si los estudios universitarios fueron iniciados antes o después de advenir a la mayoridad. La ausencia de prueba al respecto ha tenido como consecuencia que las partes sigan arrastrando alegaciones en sus respectivos recursos ante nosotros, sin que puedan citar o aludir a alguna prueba admitida en el TPI para sustentar los hechos que afirman. ¿Inició la joven sus estudios universitarios mientras era menor? ¿Los inició justo antes de advenir a la mayoridad, o después? Lo desconocemos, en tanto el TPI enfatizó más bien en la falta de continuidad de la joven en sus estudios, una vez se graduó de la escuela superior.

Entonces, retornando a la interpretación que dio el TPI acerca del Artículo 655, según expuesta en el primer párrafo de esta parte, somos de la opinión que, aun partiendo del hecho de que la joven no iniciara sus estudios universitarios inmediatamente que se graduó de la escuela superior, sino pasado un tiempo antes de llegar a la mayoridad, cabrían instancias en las que procedería reconocimiento legal a tal petitorio. Según citamos de la tratadista Torres Peralta, bien pueden preverse situaciones particulares en que un menor de edad se vea imposibilitado de continuar sus estudios universitarios inmediatamente concluya la escuela superior por causas que no le sean atribuibles o por alguna otra razón justificada. Aunque reiteremos lo ya citado, juzgamos que no se violenta el principio

recogido en el Artículo 655 del Código Civil cuando se logra probar que *el hijo se ve obligado a dejar sus estudios, para trabajar por su subsistencia y hasta para la subsistencia de su madre custodio y de sus hermanos de menor edad, quizás por el no pago de la pensión alimentaria de parte del padre alimentante; o por enfermedad o por otra justa causa que le impida cursar sus estudios en tiempo normal.* S. Torres Peralta, *La ley de sustento de menores y el derecho alimentario en Puerto Rico*, supra.

Al así observar, partimos del principio general enfatizado en nuestra jurisprudencia que advierte que la responsabilidad de proveer alimentos a los hijos no cesa *ipso facto* cuando se arriba a la mayoridad. Este principio fue convertido en ley a través del Artículo 99 del Código Civil vigente, según citamos. Es decir, en la consideración integral de la legislación atinente a la provisión de alimentos entre parientes, y la de los progenitores en particular, tal voz legislada ha de tener peso en la interpretación que sobre el asunto hagamos. Claro, el inciso (a) del referido Artículo 99 nos refiere a que consideremos la voluntad legislada según establecida en el Artículo 655.

Sobre este último artículo, no hay duda de que el Legislador integró una condición a la provisión de los *gastos universitarios* por progenitores de hijos que advienen a la mayoridad, referente a la continuación de los estudios universitarios de manera *ininterrumpida.* Sin embargo, por una parte, la legislación no hizo previsión sobre instancias en que, por causas justificadas, se hubiese pospuesto el inicio de tales estudios universitarios. Tal como los tratadistas citados, no nos resulta difícil prever instancias que pudieran dar lugar a conceder los gastos universitarios, a pesar de interrumpirse la continuidad en los estudios que el Legislador nos llama a considerar (la enfermedad es la más evidente, pero también podrían surgir otras situaciones, como el asumir un trabajo momentáneo para suplir necesidades apremiantes). Por otra parte, no pasa inadvertido que el propio articulado concede discreción al foro primario para sopesar si accede o no a

la solicitud de *gastos de estudios,* así disponiéndole expresamente que tocará al juzgador sopesar *las circunstancias particulares de cada caso.* En este sentido, no apreciamos una fórmula rígida en la pieza legislada que ate al juez de instancia, sino el reconocimiento de un espacio discrecional en el que, aquilatadas las circunstancias particulares de cada caso, entonces se esté en posición de llegar a una decisión justiciera.

En definitiva, no concordamos con la interpretación rígida que el respetado foro primario dio a la condición sobre estudios *ininterrumpidos* contenida en el Artículo 655.

Claro, lo anterior nos obliga a referir nuevamente el asunto al TPI para que cite una vista evidenciaria donde la parte apelante tenga oportunidad de presentar prueba con la que establecer sus alegaciones y, a su vez, el apelado pueda impugnar tal prueba y presentar la que estime pertinente para oponerse a la solicitud de *gastos universitarios.*

Dicho lo anterior, en modo alguno se debe interpretar que nuestra determinación adjudica hecho alguno de los alegados por la apelante. De nuevo, corresponde a la parte promovente de la solicitud de *gastos universitarios* establecer los elementos requeridos en el Artículo 655, que, en este caso, incluirá pasar prueba sobre las presuntas causas por las cuales no continuó estudios *ininterrumpidamente* luego de concluir su escuela superior, la extensión de la interrupción y causas para dicha extensión, junto a los demás elementos: *habilidades personales, potencial de desarrollo y aprovechamiento académico.* Tal determinación también sopesará u observará el principio de proporcionalidad en términos de la capacidad del apelado para proveer lo solicitado.

## IV. Parte dispositiva

Por los fundamentos expuestos, **recovamos** la *Resolución* emitida por el Tribunal de Primera Instancia. Se devuelve el caso a dicho foro para la continuación de los procesos, según aquí instruidos.

Lo acordó y manda el Tribunal y lo certifica su Secretaria. El juez Candelaria Rosa concurre con la siguiente expresión: "Concurro con la determinación de revocar la decisión del Tribunal de Primera Instancia por razón de que, como cuestión de derecho, interpreto que la adjudicación de la pensión en las circunstancias de este caso procede -desde luego- ante el carácter ininterrumpido de los estudios al transitar de la minoridad a la mayoridad y al margen inocuo de que, dentro de la minoridad, se interrumpan; además porque, como cuestión de hechos, interpreto que al fundar su determinación solo en la teoría de que los estudios debían ser ininterrumpidos, incluso dentro del período de minoridad, el Tribunal de Primera Instancia dejó de disputar y dio por hecho que la peticionaria inició estudios como menor. Por tanto, hubiese devuelto el caso solo para que dicho foro fijara el monto de la pensión."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones